COMMERCE, CROWDUS & CANTON, LTD., Near Ellum Entertainment Company, Deep Ellum Development Company, Heads Up, Ltd., and C. Edgar Sherrill, Appellants,

v.

DKS CONSTRUCTION, INC. and Texas K–Span Structures, Inc., Appellees.

No. 05–88–00818–CV.

Court of Appeals of Texas, Dallas.

July 3, 1989.

Rehearing Denied Aug. 31, 1989.

**616**

Thomas K. Boone, Dallas, for appellants.

David M. Berman, Dallas, for appellees.

Before ENOCH, C.J., and ONION[1] and BISSETT[2], JJ.

ENOCH, Chief Justice.

This is an appeal from a judgment granted to DKS Construction, Inc. (DKS) and Texas K–Span Structures, Inc. (K–Span) for moneys due and owing on three construction contracts. Appellants allege that the interest charged under the contracts was usurious, and that the trial court erred in holding all of the appellants jointly and severally liable. We agree, and for the reasons stated, reverse and render in part; reverse and remand in part; and affirm in part.

## FACTS

C. Edgar Sherrill is the general partner of Commerce, Crowdus & Canton, Ltd. (CCC), a Texas limited partnership organized to manage real estate. Sherrill is also the sole shareholder of Near Ellum Entertainment Company (Ellum Entertainment), a Texas Corporation which is the general partner of Heads Up, Ltd. (Heads Up), a Texas limited partnership. Ellum Entertainment leased an unfinished building at 2727 Canton in Dallas, Texas, from CCC. In addition, Sherrill is sole shareholder of Deep Ellum Development Company (Ellum Development), a Texas corporation created to develop properties in the east end of downtown Dallas known as the Deep Ellum area. Ellum Development was to develop properties owned by CCC.

DKS is a Texas corporation which provides construction services and materials. K–Span is a Texas corporation engaged in the commercial roofing business. DKS and K–Span have interlocking owners, directors, and officers.

In dispute is payment under a series of contracts between the various organizations listed above. .

### Contract 1.

On July 8, 1987, Sherrill, as general partner for CCC, and Robert King, as president of K–Span, signed a written contract for a

---

1. The Honorable John F. Onion, Jr., Presiding Judge, Retired, Court of Criminal Appeals, sitting by assignment.

2. The Honorable Gerald T. Bissett, Justice, Retired, Court of Appeals, Thirteenth District of Texas, at Corpus Christi, sitting by assignment.

roofing job at 2727 Canton at a cost of $21,000.00.

### Contract 2.

On July 10, 1987, Sherrill, as president of Ellum Entertainment, and King, as president of DKS, signed a written contract for interior finish-out at 2727 Canton at a cost of $347,000.00.

### Contract 3.[3]

At a later date, an oral contract was made between Sherrill, on behalf of Ellum Development, and King, on behalf of K–Span, for a roofing job at 2730 Commerce for $9,550.00. Work commenced, but progress payments were made only under the two written contracts. Ultimately, default under all the contracts occurred.

DKS and K–Span brought an action for breach of their respective contracts against their respective contracting parties. Further, DKS and K–Span brought an action for quantum meruit against all the defendants, jointly, including Sherrill, individually. The appellants stipulated that the contracts were valid as between the parties that made them and that the work was properly performed, however they responded that the interest charged them under their contracts was usurious and counterclaimed for damages. In addition, they denied that Sherrill had ever contracted with either DKS or K–Span and each generally denied that it was liable under any contract to which it was not a party.

■ The trial court found that the respective interest rates charged were not usurious, but also found that the interest rates were not usurious because of bona fide error.[4] In addition, the trial court held that DKS and K–Span were owed their respective sums of money by all the defendants, including Sherrill, individually.

### USURY[5]

In point of error one, the appellants urge that the trial court erred in failing to find that, as a matter of law, the interest charged was usurious. In related point of error three, appellants contend that the trial court further erred in finding that the usurious charge was caused by bona fide error because there was no evidence to support that finding.

■ The appellants are, thus, attacking the adverse finding on issues upon which they had the burden of proof. A complainant attempting to overcome such an adverse finding, as a matter of law, must overcome two hurdles. First, the record must be examined for evidence that supports the court's findings, while ignoring all evidence to the contrary. If there is no evidence to support the fact finder's answer, then, secondly, the entire record must be examined to see if the contrary proposition is established as a matter of law. *Holley v. Watts,* 629 S.W.2d 694, 696 (Tex.1982); *Texas & New Orleans R.R. Co. v. Burden,* 146 Tex. 109, 203 S.W.2d 522 (1947).

■ The written contracts provided:
Payments due and unpaid under the Contract Documents shall bear interest from the date payment is due at the rate entered below, or in the absence thereof, at the legal rate prevailing at the place of Project.

No rate of interest was entered in the body of the contract. In response, DKS and K–Span argue that the parties orally agreed to a specific rate of interest. In the alternative, DKS and K–Span contend the evidence at trial established "accidental and bona fide error" because of King's misinterpretation of the contract.

---

3. The record does not reflect the date or particulars of this contract, however, the fact that work was done, the amount of the charges, and which business originally contracted for the services were not contested by any of the defendants.

4. These two findings are arguably inconsistent. TEX.REV.CIV.STAT.ANN. art. 5069–1.06 (Vernon 1964). "Bona fide error" excuses one from

suffering any penalties as a result of, in fact, charging usurious interest. A finding of no usurious interest being charged because of a bona fide error presupposes that there was a usurious interest charge in the first instance.

5. No interest was charged on amounts due under contract 3.

The trial court in its conclusions of law and in the judgment awarded only six percent in interest. Therefore, the trial court made an implied finding of fact that no oral agreement between the parties modified the contract.[6] *In the Interest of W.E.R.*, 669 S.W.2d 716, 717 (Tex.1984).

Since there was no agreed upon interest rate, the "legal prevailing rate" applies. Under the facts of this case, the "legal prevailing rate" is set forth in article 5069–1.03.[7] That statute provides:

> When no specified rate of interest is agreed upon by the parties, interest at the rate of six percent per annum shall be allowed on all accounts and contracts ascertaining the sum payable, commencing on the thirtieth (30th) day from and after the time when the sum is due and payable.

TEX.REV.CIV.STAT.ANN. art. 5069–1.03 (Vernon 1987).

### Contract 1.

CCC failed to make the $6,988.00 payment which was due on September 10, 1987. By letter dated October 29, 1987, K–Span demanded payment from CCC for $7,103.30, which was broken down as follows:

$6,988.00 Principal

115.30 Interest from September 10, 1987

Article 5069–1.03 provides that interest cannot be charged until the thirtieth day after payment was due. Interest could not be charged until the thirtieth day after September 10, 1987, the date the debt was due, which would have been October 10, 1987.

### Contract 2.

Ellum Entertainment failed to make the $193,037.64 payment to DKS which was due on October 10, 1987. In an invoice dated October 29, 1987, DKS requested the amount of $232,993.50, which was broken down as follows:

$193,037.64 Principal
1,318.86 Interest
38,637.00 Billing for November payment

Again, article 5069–1.03 provides that interest cannot be charged until the thirtieth day after payment was due. Payment was due October 10, 1987; therefore, interest could not be charged until November 9, 1987.

Interest charged at any rate for a period contracted by the parties to be free of interest is not only usurious, but is "in excess of double the amount of interest allowed." *Steves Sash & Door Co., Inc. v. Ceco Corp.*, 751 S.W.2d 473, 475 (Tex.1988) (any interest at all is "double" interest allowed which is "zero"); *Houston Sash & Door Co., Inc. v. Heaner*, 577 S.W.2d 217, 221 (Tex.1979); *PJM, Inc. v. Walter Clark Advertising, Inc.*, 624 S.W.2d 282, 285 (Tex.App.—Dallas 1981, writ ref'd n.r.e.). The record in this case establishes as a matter of law that usurious interest was charged.

Since the interest charged was more than double the interest allowed, the penalties provided by subsections 1 and 2 of article 5069–1.06 must be applied and enforced, unless they are excused. The only statutory excuse to avoid the penalties imposed by article 5069–1.06 lies in a showing that the violation resulted "from an accidental and bona fide error." DKS and K–Span argue that the interest charged was the result of "accidental and bona fide error." DKS and K–Span assert that the error made was in the interpretation of the meaning of the specific contractual provision "legal rate prevailing." However, a "bona fide error" defense is only available when the evidence shows that the charge

6. Only one witness, Robert King, testified that the parties had agreed to an interest rate. He further testified that this rate was "prime plus 2%." He also testified that "prime" was ten percent. Because the trial court's judgment reflects six percent interest, it is reasonably concluded that since the trial court found that the parties did *not* agree on "prime plus 2%," it must have found that there was no agreement at all. This implied finding has not been challenged by DKS or K–Span.

7. This statute authorizes six percent interest on the debt. It is assumed this is where the trial court derived the six percent interest figure for its judgment. However, the record does not disclose the basis for the judgment award of six percent.

of usury results from the ignorance of a material fact or from other unintentional mishaps in office practice or routine which may fairly be characterized as "clerical" errors. *Esparza v. Nolan Wells Communications, Inc.*, 653 S.W.2d 532, 536 (Tex. App.—Austin 1983, no writ).

■ In this case, Robert King, president of both DKS and K–Span, ordered the bookkeeper to charge "prime + 2%," even though the contract did not provide for any interest. As mentioned, the trial court impliedly found that there was no specific agreement by the parties as to the interest rate. The only evidence regarding the calculation of the interest charge shows that DKS and K–Span, through its President, acted intentionally, and not by mistake, in charging the interest. Being mistaken as to the existence of an agreement to charge interest is not a mistake which falls within the statutory exception of "bona fide error." *See Tyra v. Bob Carroll Construction Co.*, 639 S.W.2d 690, 692 (Tex.1982); *Johns v. Jaeb*, 518 S.W.2d 857, 860 (Tex. Civ.App.—Dallas 1974, no writ). Therefore, there was no evidence supporting the trial court's finding that the interest charged was the result of bona fide error.

The undisputed evidence in the record demonstrates that the interest charged by DKS and K–Span was usurious and twice the amount allowed by law. Further, the undisputed evidence shows that the interest charged was not the result of bona fide error. The trial court erred in its findings to the contrary. Appellants, first and third points of error are sustained.

STATUTORY PENALTIES

■ Article 5069–1.06 provides for penalties:

(1) Any person who contracts for, charges or receives interest which is greater than the amount authorized by this Subtitle, shall forfeit to the obligor three times the amount of usurious interest contracted for, charged or received, such usurious interest being the amount the total interest contracted for, charged, or received exceeds the amount of interest allowed by law, and reasonable attorney fees fixed by the court except that in no event shall the amount forfeited be less than Two Thousand Dollars or twenty percent of the principal, whichever is the smaller sum; provided, that there shall be no penalty for any usurious interest which results from an accidental and bona fide error.[8]

(2) Any person who contracts for, charges or receives interest which is in excess of double the amount of interest allowed by this Subtitle shall forfeit as an additional penalty, all principal as well as interest and all other charges and shall pay reasonable attorney fees set by the court; provided further that any such person violating the provisions of this section shall be guilty of a misdemeanor and upon conviction thereof shall be punished by fine of not more than One Thousand Dollars. Each contract or transaction in violation of this section shall constitute a separate offense punishable hereunder.

*Contract 1.*

On the July 8, 1987 contract between CCC and K–Span, $115.30 in interest was charged during a period for which no interest could be charged. Ordinarily, under these facts, K–Span would forfeit to CCC three times this amount which is $345.90. However, the usury statute provides that the amount forfeited shall not be less than $2,000.00 or twenty percent of the principal, whichever is less. The principal on which interest was charged under the July 8 contract was $6,988.00. Twenty percent equals $1,397.60. Therefore, K–Span shall forfeit to CCC $1,397.60. In addition, because the interest charged was in excess of double the amount of interest allowed, the principal, $6,988.00, as well as interest and all other charges, are forfeited.

*Contract 2.*

On the July 10, 1987 contract between Ellum Entertainment and DKS, $1,318.86 was charged in interest. DKS shall forfeit

8. "Subtitle" refers to article 5069–1.01 et seq.

three times that amount, or $3,956.58, to Ellum Entertainment. In addition, since the amount charged was more than twice that amount allowed by law, the principal upon which the interest was charged as well as interest and all other charges are forfeited. The principal charged with the interest is $193,037.64 and is forfeited. DKS, however, also sued for an additional amount of $38,637.00 on the same contract for which no interest was charged and, thus, is not forfeited. *Steves Sash & Door Co., Inc.*, 751 S.W.2d at 475.

## ATTORNEY'S FEES

■ In the appellants' fifth point of error, they argue that the trial court erred in failing to award reasonable and necessary attorney's fees to them. We agree. Article 5069–1.06 provides that reasonable attorney's fees shall be paid to the obligor by any person who charges for interest greater than that allowed by law. Both CCC and Ellum Entertainment are entitled to reasonable attorney's fees fixed by the court. We sustain the fifth point of error.

## JOINT AND SEVERAL LIABILITY

In the appellants' sixth point of error, they argue that the trial court erred in concluding that all the appellants were jointly and severally liable because there was no evidence that all the appellants had contracted with DKS or K–Span, or in the alternative, were liable under a quantum meruit theory.

The two written contracts were entered into evidence. In addition, the record discloses no dispute about the parties or the terms of contract 3, the oral contract between Ellum Development and K–Span. It is the general rule that recovery under quantum meruit is disallowed where a valid express contract exists covering the subject matter of the quantum meruit claim. *Davidson v. Clearman*, 391 S.W.2d 48, 50 (Tex.1965); *Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex.1964).

DKS and K–Span argue, however, that the fundamental purpose of allowing recovery under quantum meruit is that "it is inequitable for a party to refuse to pay for the benefits he received or for work performed for him with his knowledge and consent by someone who is authorized to expect remuneration therefor." *Woodard*, 384 S.W.2d at 675. DKS and K–Span contend that since Sherrill knew that benefits were accruing to him while there were insufficient funds to pay for those benefits, he should be personally liable.

■ This is simply an argument for application of an alter ego theory. DKS and K–Span did not plead an alter ego theory, but they argue that the issue was tried by consent. However, during the direct examination of Sherrill, counsel for CCC objected to certain questions based on the fact that alter ego had not been pled. The objection was overruled, and the question allowed on the issue of quantum meruit. Both the counsel for CCC and the counsel who represented the other appellants were granted a running objection, with no objection from opposing counsel. In considering the effectiveness of a running objection, it is widely considered that a party making a proper objection to the introduction of testimony of a witness, which objection is overruled, may assume that the judge will make a similar ruling as to other offers of similar evidence and is not required to repeat the objection. *See Bunnett/Smallwood & Co. v. Helton Oil Co.*, 577 S.W.2d 291, 295 (Tex.Civ.App.—Amarillo 1979, no writ); *Crispi v. Emmott*, 337 S.W.2d 314, 318 (Tex.Civ.App.—Houston 1960, no writ). Some courts, though, have held that a running objection is primarily limited to those instances where the similar evidence is elicited from the same witness. *See City of Fort Worth v. Holland*, 748 S.W.2d 112, 113 (Tex.App.—Fort Worth 1988, writ denied); *City of Houston v. Riggins*, 568 S.W.2d 188, 190 (Tex.Civ.App.—Tyler 1978, writ ref'd n.r.e.). In these cases, however, the trial was to the jury. In our case, the trial was to the court. We hold that a running objection is an effective objection to all evidence sought to be excluded where trial is to the court and an objection is clearly made to the judge. Therefore, appellant's running objection to any evidence admitted for the purpose of proving alter-

ego was an effective objection, and the issue was not tried by consent.

 Because there exist express contracts covering the subject matter, appellants are not liable under a theory of quantum meruit. Since no evidence of alter ego was considered, Sherrill and the other appellants, not parties to the respective contracts, are not liable on contract 1, between CCC and K–Span; contract 2, between Ellum Entertainment and DKS; and contract 3, between Ellum Development and K–Span. Therefore, the trial court erred in granting recovery from all the defendants jointly and severally. The appellants' sixth point of error is sustained.

Because of our disposition of points of error one, three, and six, we do not reach points of error two, four, and seven.

CCC is entitled to a judgment against K–Span in the amount of $1,399.60, plus judgment forfeiting the principal of $6,988.00, upon which the usurious interest was charged, remaining due to K–Span. Ellum Entertainment is entitled to a judgment against DKS for forfeiture of $193,-037.64 due under the July 10, 1987 contract. DKS is entitled to judgment against Ellum Entertainment, solely, in the amount of $34,680.42 ($38,637.00 less $3,956.58). K–Span is entitled to judgment against Ellum Development, solely, in the amount of $9,550.00.

The judgment of the trial court is REVERSED in part and RENDERED as to the issues of usury and joint and several liability. The judgment is REVERSED in part and REMANDED to determine reasonable attorney's fees. The judgment is AFFIRMED in all other respects.