Leaird's Inc., d/b/a Leaird's White Elephant and White Elephant Store v. Wrangler, Inc.









 






 IN THE
TENTH COURT OF APPEALS
 

No. 10-98-201-CV

     LEAIRD'S, INC., D/B/A LEAIRD'S 
     WHITE ELEPHANT AND WHITE 
     ELEPHANT STORE,
                                                                         Appellant
     v.

     WRANGLER, INC.,
                                                                         Appellee
 

From the 52nd District Court
Coryell County, Texas
Trial Court # 29,739
                                                                                                               
                                                                                                         
O P I N I O N
                                                                                                               

      Wrangler, Inc. filed suit on a sworn account against Leaird’s, Inc., dba Leaird’s White
Elephant and White Elephant Store. Leaird’s denied Wrangler’s allegations and filed a
counterclaim alleging among other things breach of contract. A jury found in Wrangler’s
favor on the sworn account and failed to find any breach of contract by Wrangler. The court
rendered judgment in accordance with the verdict.
      Leaird’s claims in two issues that the court erred by admitting in evidence: (1) the
testimony of a bank officer and a memorandum prepared by that witness because Wrangler
failed to identify him in pretrial discovery as an expert witness; and (2) a Small Business
Administration (“SBA”) loan file pertaining to disaster-relief loan applications Leaird’s had
submitted to the SBA because Wrangler failed to produce a copy of the file to Leaird’s in
response to Leaird’s request for production of statements under former Rule of Civil Procedure
166b(2)(g).
BACKGROUND
      Leaird’s had been a family-owned business in downtown Gatesville since 1898. 
Originally, Leaird’s sold general merchandise, but over the years the business evolved until in
the 1980's Leaird’s operated a clothing store and a furniture store. Leaird’s sold primarily
Wrangler western wear in the clothing store. Jeb McClellan was Leaird’s president during the
pertinent time period. His brother Clay also participated in the operation of the business.
      The evidence at trial focused on Leaird’s relationship with Wrangler from 1989 until 1995
when Leaird’s eliminated the western wear part of the business. Carl Brown, a retired credit
department supervisor for Wrangler, testified about the status of the Leaird’s account during
the pertinent time period. Leaird’s began falling farther and farther behind on payments. As a
result, Wrangler began placing credit holds on Leaird’s orders until payments were received. 
When a payment was received, Wrangler would ship merchandise to Leaird’s corresponding to
the amount by which Leaird’s had reduced its arrearages.
      In May 1994, Wrangler reduced Leaird’s credit line from $101,000 to $75,000 because of
the arrearages. Wrangler reduced the credit line to $1 in July, effectively halting further
shipment of goods until payments were received from Leaird’s. Wrangler ultimately refused
to ship any further merchandise to Leaird’s after it failed to bring its account current. 
Wrangler sent its last shipment on December 29, 1994. Leaird’s made four payments in 1995
totaling $380.15. After these payments, Leaird’s still owed Wrangler $25,211.24, which is
the amount Wrangler sought to recover in the instant suit.
EXPERT TESTIMONY
      Leaird’s contends in its first issue that the court abused its discretion by allowing Eugene
Worthington, Leaird’s own banker, to provide expert testimony in Wrangler’s behalf and by
allowing Wrangler to introduce a memorandum drafted by Worthington because Wrangler
failed to designate him before trial as an expert witness. 
      Wrangler responds that, with respect to admission of the memo, Leaird’s failed to
preserve its complaint for appellate review because it failed to reurge its objection when
Wrangler later questioned Jeb McClellan about Worthington’s memo. Wrangler argues in the
alternative that any error in the admission of the memo was rendered harmless because the trial
court admitted similar evidence from other witnesses without objection; because the court
should have granted Wrangler’s motion for summary judgment on Leaird’s counterclaims; and
because the memo went only to the issue of Leaird’s damages, which the jury did not reach.
Pertinent Facts
      Worthington was Executive Vice-President of the National Bank of Gatesville, Leaird’s
primary lender. Worthington was in charge of the bank’s lending department. Wrangler did
not identify Worthington in discovery as an expert witness, although Leaird’s did list him as
such.
      Wrangler asked Worthington for his opinion about how Leaird’s had performed “over the
last eight years.” The trial court sustained Leaird’s objection that the question sought an
expert opinion. Wrangler then asked him how Leaird’s performed in “the ‘90 to ‘94 time
frame.” Leaird’s raised the same objection, but the trial court overruled the objection this
time. Worthington responded that the furniture store and the clothing store had each
experienced good years and bad years during this period.
      After Worthington testified extensively concerning Leaird’s loan history with the bank,
Wrangler asked him about a typewritten document identified as Plaintiff’s Exhibit 55. 
Worthington described this document as “a memo out of the Leaird’s loan file dated June 16th
of ‘96” which he had prepared. Leaird’s objected that the memo contains expert opinion and
Wrangler had not designated Worthington as an expert. The trial court responded that “most
of it is factual it seems to me.” Leaird’s repeated the objection with reference to one sentence
in particular, viz, “Mismanagement and bad financial management continued to plague them.” 
The court overruled the objection.
      Worthington then read the entirety of the memo to the jury, including the sentence to
which Leaird’s particularly objected. Counsel for Wrangler repeated the objected-to sentence
and asked, “Was that your conclusion?” Worthington responded affirmatively. Wrangler’s
counsel then asked Worthington whether he believed that “over the years Leaird’s has had bad
financial [management].” The trial court granted Leaird’s a running objection to his
testimony. Worthington responded:
I believe that you have to take action when you run a business. Sometimes they
did not take action quick enough, or notice trends in their business. That, I would
classify as bad management, yes, sir.

The remainder of Worthington’s testimony focused on his conversations with the McClellans
about their deteriorating relationship with Wrangler.
Preservation of Error
      To preserve an issue for appellate review, a party must make a timely, specific objection
and obtain a ruling on that objection. Tex. R. App. P. 33.1(a); In re M.D.S., 1 S.W.3d 190,
202 (Tex. App.—Amarillo 1999, no pet.); see also Bushell v. Dean, 803 S.W.2d 711, 712
(Tex. 1991) (op. on reh’g) (applying former appellate rule 52(a)). A running objection can
satisfy the Rule 33.1(a) requirement of a timely objection. See Atkinson Gas Co. v. Albrecht,
878 S.W.2d 236, 242-43 (Tex. App.—Corpus Christi 1994, writ denied); Commerce, Crowdus
& Canton, Ltd. v. DKS Constr., Inc., 776 S.W.2d 615, 620 (Tex. App.—Dallas 1989, no
writ). 
      If a trial court permits a running objection as to a particular witness’s testimony on a
specific issue, the objecting party “may assume that the judge will make a similar ruling as to
other offers of similar evidence and is not required to repeat the objection.” Commerce,
Crowdus & Canton, 776 S.W.2d at 620; City of Fort Worth v. Holland, 748 S.W.2d 112, 113
(Tex. App.—Fort Worth 1988, writ denied); accord Atkinson Gas, 878 S.W.2d at 242; Crispi
v. Emmott, 337 S.W.2d 314, 318 (Tex. Civ. App.—Houston 1960, no writ). However, the
courts have generally limited application of this rule to those instances in which the similar
evidence comes from the same witness. See Atkinson Gas, 878 S.W.2d at 243; Commerce,
Crowdus & Canton, 776 S.W.2d at 620; Holland, 748 S.W.2d at 113.
      Wrangler argues that Leaird’s failed to preserve any error arising from the admission of
Worthington’s opinion testimony because it later questioned Jeb about this opinion without
objection. Wrangler called Jeb as an adverse witness and questioned him extensively on
reasons for Leaird’s demise. The particular interrogation at issue occurred at the conclusion of
his “direct” examination by counsel for Wrangler:
      Q:  But of course Mr. Worthington, the banker who had worked with you for as
long as you can remember in this business, he said that mismanagement and
bad financial management—I mean, that’s you guys, right?
 
      A:  That’s what that letter says.
 
      Q:  That’s what Mr. Worthington says; isn’t that right?
 
      A:  That’s what he said. If that’s his letter and it’s there, I’m not—I haven’t
heard that, but I see it there on the deal.
 
      In this instance, counsel for Wrangler put Worthington’s opinion before the jury again in
his question. However, unsworn statements of counsel generally do not constitute evidence. 
See Banda v. Garcia, 955 S.W.2d 270, 272 (Tex. 1997) (per curiam). Although Jeb
acknowledged Worthington’s opinion, he did not endorse it. Accordingly, we conclude that
counsel’s two questions propounded to Jeb concerning Worthington’s opinion do not amount to
a failure by Leaird’s to preserve error.
 Cumulative Evidence
      Wrangler also suggests that any error in the admission of Worthington’s opinion was
rendered harmless because his opinion is cumulative of other testimony properly admitted in
evidence. To obtain a reversal on the basis of improperly admitted testimony, an appellant
must demonstrate that the admission of the complained-of evidence “probably caused the
rendition of an improper judgment.” Tex. R. App. P. 44.1(a)(1); accord Mancorp, Inc. v.
Culpepper, 802 S.W.2d 226, 230 (Tex. 1990); Owens-Corning Fiberglas Corp. v. Malone,
916 S.W.2d 551, 559 (Tex. App.—Houston [1st Dist.] 1996), aff’d, 972 S.W.2d 35 (Tex.
1998). When the complained-of testimony is cumulative, then any error in its admission is
harmless. See Mancorp, 802 S.W.2d at 230; Owens-Corning Fiberglas, 916 S.W.2d at 559. 
      Leaird’s specific complaint concerns the admission of Worthington’s opinion that
“[m]ismanagement and bad financial management continued to plague [Leaird’s]” during the
pertinent time period. Jeb and Clay both testified that they made poor management decisions. 
In addition, an accountant called by Wrangler as an expert testified that Leaird’s had too much
inventory based on the level of sales it was experiencing. He also concluded that Leaird’s
maintained inaccurate financial records which contributed to the company’s difficulties.
      This evidence of poor management is similar to Worthington’s opinion about which
Leaird’s complains. Because Worthington’s opinion is cumulative of other evidence properly
admitted, we conclude that any error arising from the admission of his testimony is harmless. 
See Mancorp, 802 S.W.2d at 230; Owens-Corning Fiberglas, 916 S.W.2d at 559. 
Accordingly, we overrule Leaird’s first issue.
SBA LOAN FILE
      Leaird’s argues in its second issue that the court erred by admitting in evidence an SBA
loan file because it contains statements made by Jeb and Clay which were not disclosed before
trial pursuant to Leaird’s discovery request. Assuming without deciding that the loan file
contains statements which Wrangler had a duty to disclose, Leaird’s failed to properly preserve
this issue for our review.
      Leaird’s posed a blanket objection to the admission of the SBA loan file on the basis that it
contains statements not previously disclosed by Wrangler pursuant to Leaird’s discovery
request. However, only portions of the loan file are even arguably objectionable on this basis. 
Rule of Appellate Procedure 33.1(a)(1)(A) requires a specific objection to preserve error. See
Tex. R. App. P. 33.1(a)(1)(A); see also Tex. R. Evid. 103(a)(1).
A general objection to a unit of evidence as a whole, . . . which does not point
out specifically the portion objected to, is properly overruled if any part of it is
admissible.

Speier v. Webster College, 616 S.W.2d 617, 619 (Tex. 1981) (quoting Brown & Root, Inc. v.
Haddad, 142 Tex. 624, 628, 180 S.W.2d 339, 341 (1944); accord Wolfe v. Wolfe, 918
S.W.2d 533, 542 (Tex. App.—El Paso 1996, writ denied).
      Because Leaird’s failed to identify the specific portions of the SBA loan file which it
deemed inadmissible and because the majority of the file is clearly not objectionable for the
reason asserted, we conclude that Leaird’s failed to properly preserve this issue for our review. 
Id. Accordingly, we overrule Leaird’s second issue.
      We affirm the judgment.
 
                                                                         REX D. DAVIS
                                                                         Chief Justice
Before Chief Justice Davis
      Justice Vance and
      Justice Gray
      (Justice Vance dissenting)
Affirmed
Opinion delivered and filed October 11, 2000
Publish